## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEITH LEFAIVER and )
)
MARY LEFAIVER )
)
    PLAINTIFFS, )
)
VS. )
)
COSMED GROUP, INC )
                                     )   **CIVIL ACTION FILE NO.:**
SPICEY PARTNERS REAL ESTATE )
HOLDINGS, LLC )   1:24-cv-00263
)
and )
)
JOHN DOES NO. 1-10, )
)
    DEFENDANTS. )
)

## AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

COME NOW Plaintiffs KEITH LEFAIVER and MARY LEFAIVER, by and through

counsel of record, and hereby state their Complaint for Damages as follows:

## INTRODUCTION

1.     This action arises from injuries sustained by Plaintiff KEITH LEFAIVER as a

proximate result of his exposure to ethylene oxide that was used on, stored on, and emitted from

the premises owned by Defendant SPICEY PARTNERS REAL ESTATE HOLDINGS, LLC and

previously owned by Defendants ERIE STERILIZATION REAL ESTATE LLC, and used on,

stored on, and emitted from the facility operated by Defendants COSMED GROUP, INC. and by

non-parties IUVO BIOSCIENCE-ERIE, LLC and MMC MEDICAL STERILIZATION

SERVICES GROUP, INC. (f/k/a Medical MANUFACTURING CORP.) through their unsafe

practices in sterilizing medical equipment. As a proximate result of these parties' unsafe ethylene oxide emissions, Plaintiff KEITH LEFAIVER contracted and was diagnosed with and is suffering from Multiple Myeloma.

2.    The Court of Common Pleas for Erie County has original jurisdiction over this matter, and this action is not subject to federal jurisdiction or removal to federal court under the provisions of 28 U.S.C. § 1332 because the claims asserted in this action relate to a tort committed in Erie, Pennsylvania, and one or more of the parties in interest properly joined and served as a defendant in this action is a citizen of the state in which the action has been brought. *See*, 28 U.S.C. § 1441(b).

3.    Venue is proper pursuant to Pa. R. Civ. No. 302(C)(3) because Plaintiff's claims arose in Erie County, Pennsylvania. The Defendants because they either own, owned, operate and/or operated a sterilization plant in Pennsylvania at 2205 East 33rd Street, Erie, Pennsylvania 16510 from which a hazardous substance or hazardous material has be released into and polluted the environment of Pennsylvania and caused injury to Plaintiff while residing in Pennsylvania, or manufactured or supplied the hazardous substances substance materials that were released form said premises.

## **PARTIES**

4.    Plaintiffs KEITH LEFAIVER and MARY LEFAIVER are residents and citizens of the State of Florida.

5.    Plaintiffs KEITH LEFAIVER and MARY LEFAIVER are married.

6.    Defendant COSMED GROUP, INC. is a foreign corporation that is registered to do business in the State of Pennsylvania. Defendant COSMED GROUP, INC. is headquartered in the State of Rhode Island, with its principal place of business in the State of Pennsylvania.

7. Defendant COSMED GROUP, INC. may be served with Summons and Complaint through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 North Orange Street, Wilmington, Delaware 19801.

8. Defendant COSMED GROUP, INC. is subject to the jurisdiction and venue of this Court.

9. Defendant SPICEY PARTNERS REAL ESTATE HOLDINGS, LLC is a foreign limited liability company that is registered to do business in the State of Pennsylvania. Defendant SPICEY PARTNERS REAL ESTATE HOLDINGS, LLC is headquartered in Rhode Island and maintains its principal place of business in the state of Pennsylvania.

10. Defendant SPICEY PARTNERS REAL ESTATE HOLDINGS, LLC may be served with Summons and Complaint through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas Texas 75201.

11. Defendant SPICEY PARTNERS REAL ESTATE HOLDINGS, LLC is subject to the jurisdiction and venue of this Court.

12. Defendants JOHN DOE No. 1 through 25 are believed to be Pennsylvania or foreign corporations, partnerships, associations, adult individuals, or other legal entities that have transacted business in the State of Pennsylvania and are and whose acts, omissions, failures and conduct responsible for the injuries and damages incurred by Plaintiffs. John Doe Defendants 1-25 are unidentified persons and/or entities pled under Pa. R. C. P. 2005, whose names, despite reasonable diligence and investigation, are presently unknown. Once the identity and the whereabouts of the John Doe Defendants are established, said Defendant(s) will be served with a copy of summons and complaint as provided by law. Defendants JOHN DOE No. 1 through 25 are subject to the jurisdiction and venue of this court. Defendants JOHN DOE 1 through 25 are

unidentified persons and/or entities pled under Pa. R. C. P. 2005, whose names, despite reasonable diligence and investigation, are presently unknown and whose acts, omissions, failures and conduct may have caused and/or contributed to the subject incidents and events.

13.     Defendants COSMED GROUP, INC. and its predecessors and successors have since at least 1986, operated a facility in Erie, Pennsylvania that sterilizes medical equipment using the chemical Ethylene Oxide ("EtO").   The facility ("the Erie Facility") is located at 2205 East 33rd Street, Erie, Pennsylvania 16510. Defendants COSMED GROUP, INC. will at times be referred to herein as "STERILIZATION DEFENDANT."

14.     Defendant COSMED GROUP, INC. acquired the ethylene oxide sterilization operation in Erie, PA from IUVO BIOSCIENCE, LLC in December 2016.

15.     Defendant SPICEY PARTNERS REAL ESTATE HOLDINGS, LLC owns the real estate on which the Erie Facility is located. Defendants SPICEY PARTNERS REAL ESTATE HOLDINGS, LLC may be referred to herein as "LANDLORD DEFENDANT."

## FACTUAL ALLEGATIONS

16.     Plaintiff KEITH LEFAIVER was diagnosed with Multiple Myeloma on or around May 1, 2015.

17.     From 1974 through 1994 (the first 20 years of his life), Plaintiff KEITH LEFAIVER resided four thousand (4,000) feet from the Erie Facility. The toxic EtO emissions were ongoing upon the property and person of the Plaintiff KEITH LEFAIVER since at least 1986, when Sterilization Defendants, upon information and belief, began their operation of the medical equipment sterilization facility.

18.     Plaintiff KEITH LEFAIVER learned of the causal connection between EtO and its and its toxic carcinogenic effects—specifically its link to blood cancers, including Multiple Myeloma, through word of mouth in January of 2024.

19.     Plaintiff KEITH LEFAIVER was unaware that he was being subjected to dangerous levels of EtO, nor could Plaintiff KEITH LEFAIVER have known the extent of the EtO emissions coming from the Erie Facility, especially given that he was a minor during the period of exposure.

20.     Ethylene Oxide, or EtO, is an odorless and colorless flammable gas at room temperature that is produced in large volumes for industrial uses.

21.     Commercial medical equipment sterilizers use ethylene oxide in their sterilization processes for over 20 billion health care products every year in the United States. The EtO sterilization process begins by placing medical equipment in a gas chamber. After air is pumped out of the chamber, ethylene oxide is introduced and allowed to diffuse into the products for several hours. Once the medical equipment is sterilized, the Ethylene Oxide is pumped out of the chamber and the remaining EtO is allowed to slowly dissipate.

22.     Since at least 1986, the STERILIZATION DEFENDANT and its predecessors and successors have used, and continue to use, EtO in their industrial medical device sterilization processes.[1]

23.     Through their industrial processes, the STERILIZATION DEFENDANT and its predecessors and/or successors emit EtO into the air, allowing it to disburse and be carried by wind and natural air movement throughout the area surrounding the Erie Facility. As such,

---

[1] *See* History, quoting "iuvo was founded in 1978 as Sterilization Testing Services (STS), which provided ethylene oxide sterilization services along with associated ethylene oxide residual analysis, microbiology testing, and in vivo toxicology testing." (https://www.iuvobioscience.com/about/history/ last accessed August 19, 2024).

residents and workers in the area have unknowingly been exposed to carcinogenic ethylene oxide for decades.

24.    At all relevant times, the STERILIZATION DEFENDANT knew, or should have known, that EtO is dangerous, toxic, carcinogenic, mutagenic, and the cause of various illnesses. As long-term users and emitters of EtO, Defendants had superior knowledge of and access to information regarding the dangers of EtO than the general public or Plaintiffs KEITH LEFAIVER and MARY LEFAIVER.

25.    EtO is highly reactive, readily taken up by the lungs, efficiently absorbed into the blood stream, and easily distributed throughout the human body.

26.    There is no known safe level of cumulative EtO exposure; its carcinogenic and DNA-damaging effects have been widely studied and known since the 1940s and definitively known to Defendants since at least 1985.

27.    Furthermore, in 2016, the EPA presented new data revealing that the EPA determined EtO increased the risk of cancer 60 times what was previously thought. This risk only increases as children are more susceptible to the toxic effects of this carcinogen.

28.    Notwithstanding, for decades Defendants chose to operate their respective businesses such that their EtO was emitted in densely populated areas full of children, houses, parks, schools, and businesses, significantly increasing Plaintiff KEITH LEFAVIER's and the other residents of Erie's risk of cancer.

29.    Further, although technologies to control EtO have been available and widely used since the 1980s, the STERILIZATION DEFENDANT operated the Erie Facility for years without using the best practices and control technologies available to reduce its emissions.

30.     As sophisticated corporations and long-term users, transporters, and emitters of EtO, Defendants had superior knowledge and access to information regarding the dangers of EtO, more so than the general public or Plaintiff KEITH LEFAIVER.

31.     While the deleterious properties of EtO are not widely known to the average person not involved in the business of using EtO, the deleterious properties of EtO have been known, or should have been known to Defendants and anyone in the business of using and emitting EtO as part of a sterilization process, for decades. By way of example:

    a. In a 1977 article, the National Institute of Occupational Safety and Health ("NIOSH") concluded that occupational exposure to ethylene oxide may increase the frequency of genetic mutations in humans. The NIOSH report also raised concerns about the potential carcinogenicity of ethylene oxide.

    b. In 1981, the NIOSH released a subsequent report which recommended that EtO be regarded in the workplace as a potential occupational carcinogen. The NIOSH based its recommendation on new evidence of EtO's carcinogenic, mutagenic, and reproductive hazards, including studies demonstrating that EtO induced cancer in experimental animals. Specifically, the studies showed an increase in instances of leukemia in line with increases of EtO concentrations, in addition to other adverse effects on reproductive health. An epidemiological investigation of Swedish workers exposed to EtO also revealed increased incidences of leukemia and other cancers.

    c. In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as reasonably anticipated to be a human carcinogen.

d. In the early 1990s, the NIOSH published the largest and most informative epidemiological study of ethylene oxide. The study analyzed over 18,000 employees working with EtO at fourteen different industrial facilities sterilizing medical equipment and food spices. The study found sufficient evidence to support a causal link between exposure to ethylene oxide and increased mortality from lymphatic and hematopoietic cancers. Follow-up studies have additionally demonstrated an association between EtO exposure and breast cancer.

e. In 1994, as a result of these findings, the World Health Organization ("WHO") listed EtO as a Group 1 human carcinogen—the agency's highest risk classification—finding ethylene oxide to be carcinogenic to humans.

f. In 2000, following suit, the U.S. Department of Health and Human Services reclassified EtO to "known to be a human carcinogen."

g. The U.S. Department of Labor's Occupational Safety and Health Administration's (hereinafter "OSHA") 2002 fact sheet on EtO indicates that "[b]oth human and animal studies show that EtO is a carcinogen" and requires employers to provide clear signs and labels notifying workers of EtO's "carcinogenic and reproductive hazards."[2]

h. In 2016, the EPA's Integrated Risk Information System similarly reclassified EtO as carcinogenic to humans, and increased—by a multiple of thirty—its estimate of EtO's cancer potency.[3]

i. Ethylene oxide exposure affects the most vulnerable members of the population. The United States Environmental Protection Agency ("U.S. EPA") states that "for

---

[2] https://www.osha.gov/OshDoc/data_General_Facts/ethylene-oxide-factsheet.pdf *accessed 8/17/2020*.
[3] *See* Occupational Safety and Health Administration (OSHA), OSHA Fact Sheet: Ethylene Oxide, https://www.osha.gov/OshDoc/data_General_Facts/ethylene-oxide-factsheet.pdf, (last accessed: February 9, 2024).

a single year of exposure to ethylene oxide, the cancer risk is greater for children than for adults. That is because ethylene oxide can damage DNA."

32.    On August 22, 2018, the U.S. EPA released the 2014 National Air Toxic Assessment ("NATA") – a screening tool that estimates cancer risks based on emission data in 76,727 census tracts across the United States.  The 2014 NATA revealed 109 census tracts in the United States with cancer risk scores greater than 100 cases per one million people exposed to toxic air pollution during their lifetime, more than what the U.S. EPA considers "acceptable" limits.

33.    The U.S. EPA "considers any exposure, however small, to a carcinogen to create some cancer risk."

34.    Despite knowing these risks, the STERILIZATION DEFENDANT'S EtO sterilization process did not comply with safe and prudent methods of EtO sterilization.

35.    At all relevant times, Defendants—by way of failure to implement control measures to limit emissions, failure to upgrade sterilization equipment, intentional shortening of EtO de- gassing/aeration/quarantining time, and/or other unsafe practices—subjected Plaintiff KEITH LEFAIVER and the Erie, Pennsylvania community to unhealthy and dangerous levels of EtO in order to increase profits and/or cut costs.

## DELAYED DISCOVERY

36.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶ 1-35 of this Complaint with the same force and effect as if fully set forth herein.

37.    Plaintiffs KEITH LEFAIVER and MARY LEFAIVER plead that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs KEITH LEFAIVER and MARY LEFAIVER knew, or through the exercise of reasonable care and

diligence should have known, of facts indicating that the Plaintiff KEITH LEFAIVER had been injured, the cause of the injury, and the tortuous nature of the wrongdoing that caused the injury.

38.     Despite diligent investigation by Plaintiff KEITH LEFAIVER into the cause of his injuries, including consultations with Plaintiff KEITH LEFAIVER's medical providers, the nature of his injuries and damages and their relation to long-term exposure to EtO, Defendants' wrongful conduct was not discovered and could not have been discovered, until a date within the applicable statute of limitations for filing each of Plaintiffs KEITH LEFAIVER's and MARY LEFAIVER's claims. Therefore, under appropriate application of the discovery rule, Plaintiffs KEITH LEFAIVER's and MARY LEFAIVER's suit was filed well within the applicable statutory limitations period.

39.     Moreover, any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of material facts known by the Defendants when they had a duty to disclose those facts. The Defendants' purposeful and fraudulent acts of concealment have kept Plaintiffs KEITH LEFAIVER and MARY LEFAIVER ignorant of vital information essential to the pursuit of Plaintiffs KEITH LEFAIVER's and MARY LEFAIVER's claims, without any fault or lack of diligence on Plaintiffs KEITH LEFAIVER's and MARY LEFAIVER's part, for the purpose of obtaining delay on Plaintiffs KEITH LEFAIVER's and MARY LEFAIVER's filing of their causes of action. The Defendants' fraudulent concealment did result in such delay.

40.     Defendants are estopped from relying on the statute of limitations defense because Defendants failed to timely disclose, among other things, facts evidencing the unreasonably dangerous levels of EtO emitted from the Erie Facility.

### FIRST CAUSE OF ACTION
#### (Negligence)

41.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶ 1-40 of this Complaint with the same force and effect as if fully set forth herein.

42.     Plaintiff KEITH LEFAIVER was exposed to harmful levels of EtO as a proximate result of the acts and omissions of each Defendant, individually and collectively.

43.     As a proximate result of each Defendant's negligent acts and omissions, individually and collectively, Plaintiff KEITH LEFAIVER developed and was otherwise diagnosed as suffering from Multiple Myeloma.

44.     At all times relevant, each Defendant owed a duty to exercise reasonable care in the operation of the Erie Facility, including regulating the emission of EtO.

45.     At all times relevant hereto, each Defendant knew, or should have known, of the carcinogenic properties of EtO generally and also of that being omitted from the work of the Erie Facility.

46.     At all times relevant hereto, each Defendant knew or should have known the foreseeability of harm to others, like Plaintiffs, if they emitted substantial amounts of EtO into the air via direct emissions and fugitive emissions.

47.     Defendants breached their duty in one or more of the following ways:

   a. Emitting EtO into the air from the Erie Facility;

   b. Emitting excessive, unnecessary, and/or dangerous volumes of EtO into the air from the Erie Facility;

   c. Using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purposed without presenting the same level of risk to human health and well-being;

d. Disregarding safe methods to adequately control EtO emissions from the Erie Facility;

e. Failing to report fugitive emissions of EtO;

f. Placing its own economic interest above the health and well-being of those who live or work in the community near the Erie Facility;

g. Failing to warn or advise Plaintiffs, as well as those who live or work in the community near the Erie Facility, that they are being exposed to EtO;

h. Failing to warn or advise Plaintiffs, as well as those who live or work in the community near the Erie Facility, that they were breathing in EtO;

i. Failing to warn or advise Plaintiffs, as well as those who live or work in the community near the Erie Facility, that it was emitting a known carcinogen into the air from its Facility in Erie, Pennsylvania;

j. Failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from the Erie Facility;

k. Failing to adequately study and test the effect of its EtO emission from the Erie Facility on the quality of air;

l. Misleading government entities as to the nature and extent of EtO emissions from the Erie Facility;

m. Concealing from the public the nature and extent of EtO emissions from the Erie Facility;

n. Failing to adequately study and test the effect of its EtO emissions from the Erie Facility on the health and well-being of those who live and work in the nearby community; and

o. Subjecting Plaintiff and those who live and work near the Erie Facility to an elevated cancer risk.

48. The STERLIZATION DEFENDANT was additionally negligent in the hiring, training, supervision, and retention of their various employees and agents who participated in the activities of the Erie Facility.

49. Defendants' negligent, grossly negligent, willful, wanton and reckless conduct, as described herein, was the proximate cause of Plaintiff KEITH LEFAIVER's illness and injuries, as a result of which Plaintiff KEITH LEFAIVER has suffered damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, and other damages as can be proven at a trial of this action.

50. Plaintiffs are entitled to recover damages against each Defendant for their individual and collective acts of negligence in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Private Nuisance)

51. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶ 1-50 of this Complaint with the same force and effect as if fully set forth herein.

52. The right of enjoyment of private property is an absolute right of every citizen.

53. At all relevant times, Defendants knew or should have known EtO to be hazardous and harmful to humans.

54. At all relevant times, Defendants knew or should have known that the levels of EtO gas emitted from the Erie Facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and wellbeing of people living and working in the community.

13

55.    Defendants knew or should have known that the levels of EtO gas emitting from the Erie Facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and wellbeing of persons breathing it on a regular basis.

56.    Defendants' operation, maintenance, and use of the Erie Facility caused those who live and work in the area surrounding the Erie Facility to breathe air containing high levels of EtO on a routine and constant basis, causing a substantially elevated risk of cancer.

57.    Defendants' emissions of carcinogenic EtO interfere with Plaintiff's enjoyment of property and cause hurt, inconvenience, or damage to Plaintiffs.

58.    As a proximate result of the Defendants' operation, maintenance, and use of the Erie Facility, Plaintiff KEITH LEFAIVER's right to breathe clean air without dangerous levels of carcinogens such as EtO was eliminated and/or severely diminished.

59.    As a proximate result of Defendants' operation, maintenance, and use of the Erie Facility, EtO continuously invaded and contaminated the areas surrounding the Erie Facility, including Plaintiff KEITH LEFAIVER's residence.

60.    As a proximate result of Defendants' use and emission of EtO, Plaintiff KEITH LEFAIVER was exposed to and inhaled a significant, meaningful, and more than *de mininis* amount of EtO.

61.    As a proximate result of Defendants' use and emission of EtO, Plaintiff KEITH LEFAIVER sustained and will continue to sustain severe and permanent damage to his health due to the emission of EtO.

62.    As a proximate result of Plaintiff KEITH LEFAIVER's inhalation of EtO from the Erie Facility, Plaintiff KEITH LEFAIVER has suffered damages in the form of medical

expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, and other damages as can be proven at a trial of this action.

### THIRD CAUSE OF ACTION
### (Public Nuisance Pursuant to 11 Pa. C.S. § 127A01)

63.     Plaintiff realleges and reaffirms each and every allegation set forth in ¶¶ 1-62 of this Complaint with the same force and effect as if fully set forth herein.

64.     The Defendants have known for decades that EtO is toxic to humans.

65.     At all times relevant, the Defendants' use and emissions of EtO constituted an unreasonable interference with the public's right to breathe clean air—least of all where communities reside, work, and raise their children.

66.     The conduct of Defendants, by means of their use and emissions of EtO, involved and continues to involve a significant interference with the public health and public safety as said Defendants' conduct placed those individuals who inhaled the toxic air at a significantly increased risk of developing blood cancers, breast cancer, and other cancers, as well as other diseases and defects.

67.     The conduct of Defendants, in their use and emissions of EtO, is of a continuing nature because defendants continue to emit EtO to this day despite knowing the risk, and Defendants have been emitting EtO since at least 1986.

68.     The general public has a right to breathe clean air that does not contain dangerous and excessive levels of carcinogens. This right is exemplified and codified in Article I of the Pennsylvania Constitution in Section 27 titled "Natural Resources and the Public Estate." The text states: "The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment."

15

69.    At all times relevant, Defendants operated the Facility such that their use and emissions caused residents of the area, such as Plaintiff, to breathe in a toxic, carcinogenic, and mutagenic gas on a near-constant basis, causing a substantially increased and elevated risk of developing cancer.

70.    Plaintiff KEITH LEFAIVER did, indeed, contract a cancer associated with exposure to EtO.

71.    As a direct and proximate result of the Defendants' improper, negligent, wrongful, and grossly negligent use and emissions of EtO from Defendants' Facility, Plaintiff KEITH LEFAIVER and the general public's right to breathe clean air without dangerous levels of carcinogens such as EtO was eliminated and/or severely diminished.

72.    As a direct and proximate result of the Defendants' improper, negligent, wrongful, and grossly negligent use and emissions of EtO from Defendants' Facility, Plaintiff KEITH LEFAIVER was caused to be continually exposed to EtO through regular and continuous inhalation.

73.    As a direct and proximate result of the Defendants' improper, negligent, wrongful, and grossly negligent use and emissions of EtO from Defendants' Facility, Plaintiff KEITH LEFAIVER developed Multiple Myeloma.

74.    Therefore, Plaintiff KEITH LEFAIVER and MARY LEFAIVER demands damages against all Defendants, including punitive damages, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

## FOURTH CAUSE OF ACTION
### (Ultrahazardous Activity/Strict Liability)

75.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶ 1-74 of this Complaint with the same force and effect as if fully set forth herein.

76.    Defendants' use and emission of EtO from the Erie Facility constitutes an ultrahazardous activity.

77.    Defendants' use and emission of EtO created a high degree of risk to those who live and work in the surrounding area. Further, the likelihood of cancer caused by Defendants' use and emission of EtO is significantly higher than the level of acceptable risk.

78.    Defendants' use and emission of EtO is especially inappropriate given the densely populated residential and commercial area in which the Erie Facility is located.

79.    The activities, as conducted by each and every Defendant are exceedingly dangerous and offer little to no value to the surrounding community.

80.    Because Defendants' activities are ultrahazardous, they are strictly liable for any injuries proximately resulting therefrom.

81.    As a proximate result of Defendants' ultrahazardous activities, Plaintiff KEITH LEFAIVER was exposed to and inhaled carcinogenic amounts of EtO.

82.    As proximate result of Plaintiff KEITH LEFAIVER's inhalation of EtO from the Erie Facility, Plaintiff KEITH LEFAIVER has suffered damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, and other damages as can be proven at a trial of this action.

17

**FIFTH CAUSE OF ACTION**
**(Violation of Article 1, Section 27 of the Pennsylvania Constitution)**

83.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶ 1-82 of this Complaint with the same force and effect as if fully set forth herein.

84.    At all times relevant hereto, pursuant to Article 1, Section 27 of the Pennsylvania Constitution, Plaintiff KEITH LEFAIVER had a right to clean air.

85.    For all the reasons outlined throughout the entirety of this complaint, the Defendants violated and invaded Plaintiff KEITH LEFAIVER's right, pursuant to Article 1, Section 27 of the Pennsylvania Constitution, to clean air by emitting excessive and dangerous amounts of EtO inhaled by Plaintiff KEITH LEFAIVER and consequently through which he contracted cancer.

86.    The Defendants violated and invaded Plaintiff KEITH LEFAIVER's right, pursuant to Article 1, Section 27 of the Pennsylvania Constitution, to clean air by committing all the various acts and omissions that are specifically outlined and averred in all Counts of this Complaint, and which also form the basis for Plaintiff's other counts in the Complaints.

87.    At all times relevant, Defendants were bound by Article 1, Section 27 of the Pennsylvania Constitution's mandate to ensure that people in Pennsylvania, including Plaintiff KEITH LEFAIVER, had clean air to breathe.

88.    As a resident of Pennsylvania during the relevant period of time, Plaintiff KEITH LEFAIVER is one of the class of persons to whom the benefit of Article 1, Section 27 of the Pennsylvania Constitution was specifically conferred.

89.    It was the intent of the legislature and citizens and residents of Pennsylvania that a private right of action and remedy exist pursuant to Article 1, Section 27 of the Pennsylvania Constitution.

18

90.   A private right of action pursuant to Article 1, Section 27 of the Pennsylvania Constitution is consistent with the underlying purpose of the Article 1, Section 27 of the Pennsylvania Constitution to protect people in Pennsylvania from breathing, polluted, unclean or unsafe air.

91.   Therefore, Plaintiffs KEITH LEFAVIER and MARY LEFAVIER demand damages against all Defendants, including punitive damages, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages, and costs on all counts.

## SIXTH CAUSE OF ACTION
### (Aiding and Abetting Tortious Conduct – As to LANDLORD DEFENDANT only)

92.   Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶ 1-90 of this Complaint with the same force and effect as if fully set forth herein.

93.   LANDLORD DEFENDANT own[ed] and rent[ed] to the STERLIZATION DEFENDANT the property upon which the Erie Facility is located and the building in which the Erie Facility is operated.

94.   At all relevant times, LANDLORD DEFENDANT assisted the STERILIZATION DEFENDANT in its operations through, at the very least, the maintenance of the building and propery. LANDLORD DEFENDANT knew the STERILIZATION DEFENDANT'S operations would emit EtO into the atmosphere.

95.   At all times LANDLORD DEFENDANT assisted the STERILIZATION DEFENDANT, LANDLORD DEFENDANT knew or should have known that EtO is carcinogenic to humans.

96.    Without assistance from LANDLORD DEFENDANT, the STERILIZATION DEFENDANT would not have been able to operate the Erie Facility or been able to emit EtO into the area surrounding the Erie Facility.

97.    As a proximate result of LANDLORD DEFENDANT'S assistance, the STERILIZATION DEFENDANT negligently breached their duty and failed to exercise ordinary care for the health and well-being of Plaintiff KEITH LEFAIVER.

98.    LANDLORD DEFENDANT knowingly assisted, aided, and abetted the STERILIZATION DEFENDANT in its negligence against Plaintiff, and are liable to Plaintiffs, along with the other Defendants, for causing or contributing to Plaintiff KEITH LEFAIVER's illness and injuries.

99.    As a proximate result of the actions and omissions of LANDLORD DEFENDANT, Plaintiff KEITH LEFAIVER has suffered damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, and other damages as can be proven at a trial of this action.

## SEVENTH CAUSE OF ACTION
### (*Respondeat Superior* and/or Vicarious Liability – as to the STERILIZATION DEFENDANT only)

100.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶ 1-99 of this Complaint with the same force and effect as if fully set forth herein.

101.    Upon information and belief, at all times pertinent to this Complaint, the actions taken by STERILIZATION DEFENDANT were undertaken by employees and/or agents of the STERILIZATION DEFENDANT ("the STERILIZATION EMPLOYEES").

20

102.    Upon information and belief, at all times pertinent to this Complaint, the STERILIZATION EMPLOYEES were acting within the course and scope of their employment and/or agency with the STERILIZATION DEFENDANT.

103.    Upon information and belief, at all times pertinent to this Complaint, the STERILIZATION EMPLOYEES were acting in furtherance of the interests of the STERILIZATION DEFENDANT.

104.    The STERILIZATION DEFENDANT is therefore liable under the doctrines of *respondeat superior*, vicarious liability and/or statutory employer liability for the tortious acts and/or omissions of their employees and/or agents.

105.    As a proximate cause of the acts and omissions of the STERILIZATION DEFENDANT, by and through the STERILIZATION EMPLOYEES, Plaintiff KEITH LEFAIVER has suffered damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, and other damages as can be proven at a trial of this action.

## EIGHTH CAUSE OF ACTION
### (Loss of Consortium)

106.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶ 1-105 of this Complaint with the same force and effect as if fully set forth herein.

107.    Plaintiff MARY LEFAIVER is the spouse of Plaintiff KEITH LEFAIVER.

108.    As a proximate result of the wrongful and tortuous acts of Defendants, Plaintiff MARY LEFAIVER has suffered the loss of affection, society, comfort, support, consortium, and companionship of her husband, Plaintiff KEITH LEFAIVER.

109.    Defendants' wrongful conduct as alleged above was the proximate cause of the damages suffered by Plaintiff KEITH LEFAIVER and has caused Plaintiff MARY LEFAIVER

to incur damages in an amount to be proven at trial equal to the loss of affection, society, comfort, support, consortium and companionship of her husband.

## NINTH CAUSE OF ACTION
### (Gross Negligence - Punitive Damages)

110.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶ 1-109 of this Complaint with the same force and effect as if fully set forth herein.

111.    At all times relevant, Defendants owed a duty to refrain from willful and wanton misconduct and/or conduct which exhibited an indifference and/or conscious disregard to the health, safety, and well-being of Plaintiffs and those living and working in the area surrounding the Erie Facility. Notwithstanding their duties, Defendants have been grossly negligent and have breached their duties in one or more of the following ways:

   a. Emitting or allowing the emission of dangerous volumes of EtO into the air from the Erie Facility;

   b. Disregarding safe methods to adequately control EtO emissions from the Erie Facility;

   c. Failing to install, maintain and/or operate adequate control or treatment equipment of EtO emission from the Erie Facility or require same be done or implemented;

   d. Failing to warn or advise those who live, work, or attend school in the community that they were being exposed to EtO;

   e. Failing to reasonably test for and/or adequately record test results of high levels of EtO in Plaintiff's environment;

   f. Ignoring or not acting upon test results showing high levels of EtO;

   g. Underreporting EtO levels; and

22

h.  Subjecting those who live and work near its facilities to elevated cancer risks.

112.  Defendants were motivated by financial profit to intentionally, recklessly, maliciously, fraudulently, willfully, and wantonly expose Plaintiff to EtO by failing to take proper precautions to prevent the emission of unsafe levels of EtO from these facilities

113.  As a proximate result of Defendants' gross negligent use and emission of EtO, Plaintiff KEITH LEFAIVER has breathed in air contaminated with elevated levels of EtO—amounts that are far higher and more hazardous than acceptable standards, including those set by the U.S. EPA, and Plaintiff KEITH LEFAVIER was diagnosed with and is suffering from Multiple Myeloma.

114.  The conduct of each Defendant as set forth hereinabove showed willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of a conscious indifference to consequences.  Therefore, Plaintiffs KEITH LEFAVIER and MARY LEFAVIER demand damages against all Defendants, including punitive damages, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts to punish and deter each Defendant from repeating or continuing such unlawful conduct.

**WHEREFORE, Plaintiffs pray**:

a.  That process issue according to law;

b.  That each Defendant be served with a copy of Plaintiffs' Complaint and show cause why the prayers for relief requested by Plaintiffs herein should not be granted;

c.  That Plaintiffs be granted a trial by jury in this matter;

d.  That the Court enter a judgment against each Defendant for all general and compensatory damages allowable to Plaintiffs;

e.  That the Court enter a judgment against each Defendant for all special damages allowable to Plaintiffs;

f.  That the Court enter a judgment against each Defendant serving to award Plaintiffs punitive damages as provided by law;

g.  That the Court enter a judgment against each Defendant for all other relief sought by Plaintiffs under this Complaint;

h.  That the costs of this action be cast upon Defendants; and

i.  That the Court grant Plaintiffs such further relief which the Court deems just and appropriate.

Respectfully submitted this 12th day of December, 2024.

_/s/ Thomas E. Bosworth_
Thomas E. Bosworth
Attorney Identification No. 323350
**BOSWORTH LAW**
123 So. Broad Street, Suite 1100
Philadelphia, PA  19109
(267) 928-4183
tom@tombosworthlaw.com

24

And

___/s/ Eric J. Hertz_____

Eric J. Hertz* Lillian Leibu*
**ERIC J. HERTZ,  P.C.**
*Pro Hae Vice to be submitted*
8300 Dunwoody Place
Suite 210
Atlanta, GA 30350
(404) 577-8111
hertz@hertz-law.com
lilly@hertz-law.com

And

___/s/ Sharon J. Zinns_____

Sharon J. Zinns
*Pro hac vice application to be submitted*
**ZINNS LAW, LLC**
4243 Dunwoody Club Drive
Suite 104
Atlanta, Georgia 30350
(404) 882-9002
sharon@zinnslaw.com

*Attorneys for Plaintiff*

25